McIlvaine, J.
In compliance with the second section of the sixth article of the constitution, which provides, “ The general assembly shall make such provisions, by taxation or otherwise, as with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state,” general laws have been passed from time to time for the organization and maintenance of common schools throughout the state.
In the system adopted by the general law of May 1, 1873 (in force when the act under consideration was passed, and reenacted in substance in the Revised Statutes), the state was divided into school districts, styled respectively city districts of the first class, city districts of the second class, village districts, special districts, and township districts, and for each district was provided a board of education having the gen *61 eral management of the schools in such district. And it was also provided that “ The several boards of education now organized and established, and all school districts organized under the provisions of this act, shall be, and they are hereby declared to be, bodies politic and corporate;” and the act under consideration declares that the New London school district shall be governed and controlled in every manner by the laws of Ohio, now in force relating to village districts. Hence, it is claimed by the relator that this act, being a special act, assuming to confer corporate powers, is in violation of the 1st section of the 13th article of the constitution, which provides, “ The general assembly shall pass no special act conferring corporate powers.”
Whether powers conferred by the legislature upon a common school district be corporate or not, within the meaning of the provision of the constitution, cannot be determined definitively by the mere fact that such district or its board of education is declared by statute to be a corporation; but rather by the object of its creation and the nature of its functions. The district is organized as a mere agency of the state in maintaining its public schools, and all its functions are of a public nature. The evils, which this provision was intended to prevent, are not found in the special privileges conferred upon such public agencies. The evils sought to be prevented were such as resulted from special privileges conferred upon private corporations. That the inhibition extends to municipal corporations, cities and villages, has been settled by adjudications. See State v. Cincinnati, 20 Ohio St. 18, and 28 Ohio St. 445; State v. Mitchell, 31 Ohio St. 592, and cases there cited. In reference to these decisions, it is proper to remark that many of the powers and franchises of municipal corporations are of a private and local character, essentially different from those of mere political subdivisions of the state, commonly called quasi corporations. And again, cities and villages are classified as corporations and provided for in article 13 of the constitution, which relates solely to corporations; section 6 of which provides for their organization by general laws, so that the decisions referred to, iu which the inhibition of the 1st section is held to apply to *62 municipal corporations, are of no weight on the proposition that school districts, or other political subdivisions of the state, are subject to the same inhibition.
On the other hand, school districts are constituted so as to partake rather of the character of counties and townships, which are provided for in the 10th article of the constitution, not as corporations, but as mere subdivisions of the state for political purposes, as mere agencies of the state in the administration of public laws. Hunter v. Mercer County, 10 Ohio St. 515; State v. Cincinnati, 20 Ohio St. 18. In this article reference is made to “ similar boards ” in connection with the commissioners of counties and trustees of townships.
It is quite obvious to us that county and township organizations, although quasi corporations, are not within the meaning of this provision of the constitution; and, upon full consideration, we are unanimous in the opinion, that school districts, as similar organizations, though declared by statute to be bodies politic and corporate, are not within the reason or meaning of this inhibition of the constitution. 11 Kansas 23, a case exactly in point.
¡¡jit is also contended that the statute in question is in conflict with section 26, article 2 of the constitution, which provides that “ All laws of a general nature shall have a uniform operation throughout the state.” Confessedly this statute operates only in New London township, and, under it, the schools of the township are organized and supervised differently from those of any other township in the state.
The true meaning of this constitutional provision is somewhat involved in obscurity, and has been questioned several times before this court. Two propositions, at least, involved in its construction may be said to have been settled: 1. That the general form of a statute is not the criterion by which its general nature is determined. In several instances, portions of the state have been exempted from the operation of a statute, in form general, by the enactment of local and special laws. State v. Judges, 21 Ohio St. 1; McGill v. State, 31 Ohio St. 228. 2. That whether a law be of a general nature or not depends upon the character of its subject matter. Kelly v. State, 6 *63 Ohio St. 272: McGill v. State, 31 Ohio St. 228. It follows, therefore, that if the subject matter be of a general nature, all laws in relation thereto must have a uniform operation throughout the state, and if the subject matter be of a local nature, the legislature may provide therefor by laws either general or local in form.
The difficulty, therefore, in all cases, is in determining whether the subject matter of a.statute be of a general nature or not, and this difficulty, it seems to me, cannot be obviated by general rules, but by the consideration of each case as it arises.
That courts, as well as legislators, will differ as to this question, in many cases, is to be expected. TIence, the presumption in favor of the constitutionality of statutes, when challenged under this provision, is entitled to peculiar weight. But, while this is so, courts dare not trifle with this guaranty of the constitution, or fritter it away by holding the provision to be a mere direction to the general assembly, whose judgment in the premises is final. That there are subjects for leg-, islation of a general nature, concerning which all statutes must have a uniform operation throughout the state, I entertain no doubt. And, although it would be presumptuous to attempt an enumeration of them, 1 will venture to suggest the subjects of marriage and divorce, and the descent and distribution of estates, and others of like common and general interest to all citizens of the state.
In order, however, to avoid misunderstanding, I will here add, that on subjects concerning which uniformity is required, I have no doubt, that judicious classification and discrimination between classes, will not destroy the required uniformity.
Again, I assume that no one will dispute the proposition, that if the constitution declares a given subject for legislation to be one of a general nature, that all laws in relation thereto must have a uniform operation throughout the state, and courts should not hesitate to declare special and local enactments on such subject to be unconstitutional and void.
This brings us to the turning-point in the case. The constitution declares, not only, that the general assembly shall pass *64 suitable laws to encourage schools and the means of instruction, (sect. 7, article 1), but also, that it shall make such provisions, by taxation or otherwise, as, with the income arising from the school trust fund, “ will secure a thorough and efficient system of common schools throughout the state (section 2, article 6). A majority of the court are of opinion that the subject of common schools is thus declared to be one of a general nature. These schools are sustained, in part, by a trust fund in which every section, as well as every individual of the state, has a common interest. This is not all: the interest of every section and every individual is to be secured by a thorough and efficient system of schools, and, as if it were to guard against such special and local legislation as we find in this statute, it is expressly declared that such system shall extend “ throughout the state.” It appears to me that no amount of logic could make plainer the proposition, that the common schools of the state, as a subject for legislation, is one of a “ public nature,” and that all laws in relation to the organization and management thereof must have a uniform operation throughout the state.
It is no answer to this objection to the statute, to say that the system inaugurated by the general law is not interfered with by this local act: inasmuch, as it is provided that the district of New London township shall be governed in every manner by the laws in force relating to village districts: for two reasons: 1st. Because under the general law there is no authority for extending the government of village districts over the subdistricts of townships, or for consolidating village and township districts in the manner provided in this act: and, 2d. There is no authority under the general act for organizing a board of education, as under this local enactment. And surely it cannot be said that these matters are not parts and parcels of the system provided for in the general statute.
"We will not undértake to compare the two systems as to efficiency. If the New London system is more efficient than that provided by the general law, it should be adopted throughout the state, otherwise it should not ;,but this is a consideration alone for the general assembly. We are satisfied, however, that it was a wise provision in the constitution that the system of *65 common schools should be controlled and governed by general laws,- so that the whole state may enjoy the benefits of the best system which the experience and wisdom of the legislature case devise. It does not require a prophetic eye to see, that local legislation to suit the views of this locality and of that, would soon impair the efficiency of our public schools — that while in some places they might be elevated, in others they would be degraded. True, in some localities, from density of population and other causes, different necessities may exist requiring modifications in the management of schools in order to attain the greatest efficiency: but for all such cases, ample provision can be made by judicious classification and discrimination in general laws.
And I will add, in conclusion, that in expressing these views, the majority of the court should not be understood as holding, that, under peculiar circumstances, local legislation may not be resorted to for the purpose of enabling localities to discharge duties merely incidental, and such as would be incidental to any system, but would not either change or destroy the system itself; for instance, in the selection or change of school-house sites, or the erection or repair of school buildings and the like.

Judgment of ouster.

White and Johnson, JJ., did not concur in the second proposition of the syllabus.